### WOOD et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. February 18, 1896.)

1. CUSTOMS DUTIES—VALUATION OF FOREIGN COIN—AUTHORITY OF SECRETARY OF TREASURY.

The statutes directing the secretary of the treasury to proclaim the values of foreign coin as expressed in the money of account of the United States (Rev. St. § 3564; 26 Stat. 624) do not require the secretary to take the valuation of such foreign coin as established by proclamation at the date of the entry, rather than at the date of exportation, in the estimate of the values of imported merchandise. And the secretary's proclamation of July 1, 1891, and the corresponding regulations of 1892, changing the time from the former to the latter date, are valid. Rev. St. §§ 251, 2903. Heinemann v. Arthur's Ex'rs, 7 Sup. Ct. 446, 120 U. S. 82, distinguished.

2. SAME—JURISDICTION OF BOARD OF GENERAL APPRAISERS.

The board of general appraisers has jurisdiction to review the action of the collector in regard to the date at which the value of foreign coin is to be estimated in determining dutiable value. U. S. v. Klingenberg, 14 Sup. Ct. 790, 153 U. S. 93, distinguished.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Everit Brown, for appellants.
Wallace Macfarlane, U. S. Dist. Atty.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The facts in the case are undisputed. Wood & Payson exported from Russia 513 bales of Donskoi wool, of the third class, upon which the proper rate of duty under the tariff act of October 1, 1890, was 32 per cent. ad valorem. The other facts are succinctly stated by the board of general appraisers as follows:

"(1) The shipment of the goods covered by this protest was made from Russia on or about December 1, 1891. (2) The merchandise arrived in the United States, and was entered for consumption, January 8, 1892. (3) The merchandise was purchased and invoiced in silver roubles of Russia. (4) The collector, in liquidating the entry, estimated the value of the silver roubles in gold dollars of the United States to be $0.578, in conformity with the value established by the director of the mint, as proclaimed by the secretary of the treasury October 1, 1891. (5) The value of the silver rouble, as estimated by the director of the mint, and proclaimed by the secretary of the treasury on January 1, 1892, was $0.553. The appellants (importers) claim that the entry should have been liquidated on the basis of value of the silver rouble as proclaimed by the secretary of the treasury January 1, 1892. The issue presented in this case is whether the collector should have adopted the value of the silver rouble at the date of exportation, or at the time of entry."

The board of general appraisers sustained the protest, and reversed the action of the collector. The circuit court, upon appeal, reversed the decision of the board of general appraisers, upon the ground that they had no jurisdiction. From the decree of the circuit court the importers appealed to this court.

The two important questions in the case are: (1) Was the action of the collector legal or illegal? (2) Was the action of the collector final, and, whether correct or incorrect, was it the subject of appeal to the board of general appraisers?

An examination of either question requires an historical reference to the statutes upon the subject of the valuation of foreign coins, and to the decisions of the supreme court thereon. This brings into immediate prominence the question of the legality of the collector's action, which will be first considered. The first section of the act of March 3, 1873 (17 Stat. 602), which became section 3564 of the Revised Statutes, provided as follows:

"That the value of foreign coin, as expressed in the money of account of the United States, shall be that of the pure metal of such coin of standard value, and the values of the standard coins in circulation of the various nations of the world shall be estimated annually by the director of the mint, and proclaimed on the 1st day of January by the secretary of the treasury."

Although this section did not, in terms, declare that the value of foreign coins as proclaimed by the secretary of the treasury was to be applied in the estimation of the invoice values of imported goods, the supreme court, in Arthur v. Richards, 23 Wall. 246, held that this was the correct construction of the section, and that it declared the rule for the ascertainment of the value of foreign coins, by which officers charged with the collection of duties upon imports were to be governed, and furthermore decided in Cramer v. Arthur, 102 U. S. 612, and in Hadden v. Merritt, 115 U. S. 25, 5 Sup. Ct. 1169, that:

"The value of foreign coins, as ascertained by the estimate of the director of the mint, and proclaimed by the secretary of the treasury, is conclusive upon customhouse officers and importers."

Section 52 of the tariff act of October 1, 1890 (26 Stat. 624), changed the pre-existing statutes by requiring that the values of the coins of foreign countries should be estimated by the director of the mint quarterly, instead of annually, and should be proclaimed by the secretary of the treasury quarterly, on the 1st day of January, April, July, and October in each year. The annual proclamations of the secretary

of the treasury, after the act of 1873, until and including the proclamation of January 1, 1891, declared that the estimates of the director of the mint were to be followed in the valuations of foreign merchandise imported on or after the date of the proclamation, but it will be perceived that the statute had not established either the date of exportation or of importation as the date at which the values of foreign coins were to be estimated. The proclamation of July 1, 1891, informed the collectors of customs that the estimate by the director of the mint of that date was to be followed in estimating the value of foreign merchandise exported to the United States on or after July 1, 1891, and all succeeding proclamations have been in the same form. The customs regulations of 1892 were changed to correspond with the change in the form of the proclamation.

It is urged by the importers that this change from the valuation of foreign coin in force at the time of the entry to the valuation in force at the date of the exportation was unlawful. We perceive nothing in the statutes which compels the secretary to take the date of entry, rather than the date of importation. It is a matter of detail in regard to the execution of the customs laws, which the secretary of the treasury has express authority to regulate by rules and regulations not inconsistent with law. Section 251 of the Revised Statutes provides that the secretary "shall prescribe    *   *   *    rules and regulations not inconsistent with law, to be used    *   *   *    in carrying out the provisions of law relating to raising revenue from imports or to duties on imports." A very early statute, still in existence, as section 2903 of the Revised Statutes, provided as follows:

"The president may cause to be established fit and proper regulations for estimating the duties on merchandise imported into the United States, in respect to which the original cost shall be exhibited in a depreciated currency, issued and circulated under authority of any foreign government."

By virtue of the power conferred by these statutes, the secretary originally adopted the system of reducing the currency of foreign countries into the money of the United States, according to the proclaimed value at the date of entry of the merchandise; but there was a propriety in making the currency valuations correspond with the obvious and long-continued statutory policy of congress, which was to estimate the value of imported merchandise at or near the date of exportation. This policy is clearly manifested in the various provisions of the act of June 10, 1890, in regard to valuation of imported goods; and after quarterly estimates were prescribed the change was entered upon for the purpose of bringing the entire system of valuations into harmony, and was a change which the secretary was empowered to make by virtue of the quoted statutes, unless the new regulation was inconsistent with law. But it is said that the supreme court, in Heinemann v. Arthur's Ex'rs, 120 U. S. 82, 7 Sup. Ct. 446, declared that the valuation of foreign coins must in all cases be taken as of the date of entry of the goods. The facts in that case were as follows: The importers bought in Russia, in October, 1873, a quantity of carpet wools, which were imported into the port of New York, and entered at the customhouse, January 5, 1874. The importers insisted that the Russian rouble should be computed at 7

cents, which was its value under the act of March 3, 1843 (5 Stat. 625), and its statutory value at the time of the exportation. The director of the mint, in pursuance of the statute of March 3, 1873, estimated the value of the rouble for the year 1874, at 77.17 cents, and on December 29, 1873, the secretary of the treasury proclaimed that:

"From and after January 1, 1874, the following table of standard values of foreign moneys, reduced to the moneys of account of the United States, will, until otherwise provided by law or regulation, be taken at customhouses in computing the invoice value of all imported merchandise expressed in such currency, to wit, Russian roubles, of 100 copecks, silver, 77.17."

The supreme court held that the effect of the act of 1873 was to repeal the act of 1843, and that the rouble must be computed at 77.17, its value when the computation was to be made. The court, also, among other suggestions, said that the statute as to computation applied as of the date of the entry, to the entered value. In view of the fact that the statute of 1843 had been repealed, this was true; and this remark is to be construed in connection with the regulation of the secretary, which was a part of the case, and which provided that the valuation should be taken in accordance with the proclaimed estimate at that date. The court cannot be understood as intending to say that the statute was imperative, and demanded that, until repealed or altered, the computation must be made in accordance with the proclamation last made before the date of the entry. The attention of the court was directed to the effect of the statute of 1873 upon the statute of 1843, and no question existed as to the power of the secretary, after the act of 1873 went into effect, to instruct collectors to compute in accordance with the valuation which was in existence at the date of exportation.

The next question relates to the finality of the action of the collector, and whether the board of general appraisers had power to review his action in regard to the date at which the valuation of foreign coin is to be estimated. The counsel for the government insists that his action was not the subject of appeal, and, as authority for this position, relies upon the decision of the supreme court in U. S. v. Klingenberg, 153 U. S. 93, 14 Sup. Ct. 790. In that case the importer imported merchandise from Austria-Hungary, in July, 1892. The invoices were made out in paper florins of that country, but no consular certificate giving the value of the paper florin accompanied the invoices; and the collector estimated the florin at $0.482, which was the value of the gold florin as proclaimed by the treasury department July 1, 1892. The importer protested because the collector should have adopted the silver florin as the standard value, which was, as proclaimed by the treasury department, $0.32. The portion of the proclamation of July 1, 1892, which related to Austria-Hungary, contained a footnote which stated as follows: "Silver the nominal standard, paper the actual standard, the depreciation of which is measured by the gold standard." The supreme court, following its previous decisions, supra, naturally held that the collector's action was correct, because, "in the proclamation and the footnote attached thereto, silver was stated to be only the nominal standard, while paper was the actual standard, the depreciation of

which was to be measured by the gold standard," and, furthermore,, that the collector's action, being in accordance with the proclamation of valuation, was conclusive. In the present case the collector's action, if it was erroneous, was illegal, because it was in violation of the statute of 1873, and the question before him depended upon the construction of sundry statutes upon the subject. In the Klingenberg Case the collector was simply called upon by the statute to follow the estimate made by the director of the mint, and proclaimed by the secretary of the treasury, and his action was not the subject of reversal. In this case the collector was compelled to construe the statutes, and determine which proclamation he should observe. The Klingenberg Case is not an authority in favor of the proposition that an act of the collector in regard to valuation of foreign coins which is or which may be in violation of the statutes cannot be the subject of review or of reversal by the board of general appraisers. On the contrary, the opinion asserts that by section 14 of the customs administration act of June 10, 1890, "if the decision of the collector imposes an excessive amount of duties, under an improper construction of the law, the importer may take an appeal to the board of general appraisers, whose decision on such questions is not made conclusive, as it is in respect to the dutiable value of the merchandise, and, not being conclusive, is subject to review [by the circuit court], under the express provisions of section 15." It follows that the validity of the action of the collector is sustained, and that the judgment of the circuit court in reversing the decision of the board of general appraisers is affirmed.