## UNITED STATES v. KNAUTH et al.

### (Circuit Court, S. D. New York. December 9, 1896.)

1. CUSTOMS DUTIES—INVOICE IN FOREIGN CURRENCY—VALUATION.
   When the value of imported merchandise is stated in the invoice in a foreign currency, the value of such currency at the time of exportation from the foreign country is to be taken for the purpose of fixing the valuation of the merchandise in United States currency.

2. SAME—VALUES OF FOREIGN COINS—PROCLAMATION BY SECRETARY.
   The statement of the values of foreign coins, contained in a proclamation thereof by the secretary of the treasury, is conclusive upon the customs officials in reducing to United States currency a valuation of imported merchandise.

3. SAME—DEPRECIATED FOREIGN CURRENCY.
   A proclamation of the secretary of the treasury stated the value of the florin of Austria-Hungary to be $.482, according to the gold standard, $.32 according to the silver standard, with silver the nominal standard, paper the actual standard, its depreciation measured by the gold standard. *Held*, that a valuation of imported merchandise in florins must be reduced to United States currency on the basis of the gold standard.

This was an appeal by the government from a decision of the board of general appraisers reversing the decision of the collector of the port of New York as to the valuation of certain ivory buttons imported from Austria by Knauth, Nachod & Kuhne.

The goods were exported in three invoices, one of June 20, 1892, and two of July 5, 1892. They were all entered July 22, 1892. The value of the goods was stated in the invoices in florins, which were reduced to United States currency by the collector, in the absence of a currency certificate of depreciation by the United States consul, at a valuation of $.482 each, in accordance with the quarterly currency circular in force at the time of the exportation from Austria. The importers claimed, in their protest, that duty should be assessed on the value of the Austrian silver florin, as proclaimed by the secretary of the treasury July 1, 1892, viz. $.32; that the unit of value in Austria-Hungary is the florin, of which the value is $.32, and no more; that a consular certificate, giving the florin a depreciated value in excess of $.32, would be of no effect, unless showing a depreciation below the silver florin, the standard and monetary unit of the country; that the actual standard in Austria-Hungary is the silver florin, the value of which, as estimated by the director of the mint, and proclaimed by the secretary of the treasury July 1, 1892, was $.32, and no more; and that there is no gold florin in actual circulation or use, and no gold standard for the florin.

Henry D. Sedgwick, Asst. U. S. Atty.
Stephen G. Clarke, for defendant.

WHEELER, District Judge. These importations are from Austria-Hungary in three invoices in florins, one of June 30, and the other two of July 5, and one entry of July 21, 1892. The collector computed the value of the first at the silver standard, according to the proclamation of April 1, and of the other two at the gold standard of the proclamation of July 1, 1892. The board of general appraisers appear to have computed all according to the silver standards. Some question was made at the argument whether the value of the currency at the time of the exportation from the foreign country or at the time of importation to this country should govern. The value to be ascertained is "the actual market value or wholesale price of such merchandise as bought and sold in usual wholesale quanti-

ties, at the time of exportation to the United States, in the principal markets of the country whence imported." Customs Administrative Act 1890, § 19 (26 Stat. 139). The ascertainment of this market value must include the value of the foreign currency at that time. This seems to be according to the practice and understanding of the treasury department. According to the proclamation of July 1, 1892, the value of the florin of Austria-Hungary at the gold standard there in the currency of the United States was $.482; according to the silver standard there, $.32; with "silver the nominal standard, paper the actual standard, the depreciation of which is measured by the gold standard." The value of foreign coin, for this purpose, as expressed in the money of account of the United States, is that of the pure metal of such coin of standard value. Tariff Act 1890, § 52 (26 Stat. 624). The standard referred to for this purpose of ascertaining actual value in the currency of the United States must be real standard, and not the merely nominal standard. The currency of the United States taken there would buy according to its value compared with the standard by which values there would be measured. This, according to the proclamation of July 1st, was the gold standard; and this would seem to have been conclusive upon the customs officers and importers. Hadden v. Merritt, 115 U. S. 25, 5 Sup. Ct. 1169; U. S. v. Klingenberg, 153 U. S. 93, 14 Sup. Ct. 790; Wood v. U. S., 18 C. C. A. 553, 72 Fed. 254. According to these views, the liquidation of the collector was right. Decision of appraisers reversed.