FRY & FRIEDSAM v. UNITED STATES (No. 2459).[1]

CONSTRUCTION, SECTIONS 25, TARIFF ACT OF 1894, AND 403, EMERGENCY TARIFF ACT OF 1921—REPEAL—CURRENCY CONVERSION.

Section 403, emergency tariff act of 1921, is a complete revision of section 25, tariff act of 1894, and repeals the method of ascertaining the value of foreign currencies, establishing a new method of its own. This method is effectuated

---

[1] T. D. 40694.

by the regulations of the Secretary of the Treasury, Section VIII, of T. D. 38742. Goods were shipped from Crefeld, Germany, by rail to Rotterdam, Holland, and thence, by steamer to New York. It is conceded that the date of exportation is unknown and that the consular invoice was post-certified. Entry was made by pro forma invoice. It was correct to convert the currency at the New York Federal Reserve Bank rate, in accordance with the direction of section 403, emergency tariff act of 1921, on the date of the consular invoice, as directed by Section VIII of T. D. 38742. It would have been incorrect to make the conversion as of the date of the certification of the consular invoice, as directed by section 25 of the tariff act of 1894, since that portion of the earlier act is repealed by its omission from the revision made by the later act.

## United States Court of Customs Appeals, February 17, 1925

Appeal from Board of United States General Appraisers, Abstract 47581

[Affirmed.]

*John Giblon Duffy* for appellants.

*William W. Hoppin,* Assistant Attorney General (*Charles D. Lawrence* and *Peter Abeles,* special attorneys, of counsel), for the United States.

[Oral argument Jan. 15, 1925, by Mr. Duffy and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BLAND, and HATFIELD, Associate Judges; BARBER, Associate Judge, participating in the decision by agreement of counsel

GRAHAM, Presiding Judge, delivered the opinion of the court:

Gebrüder Passavant, at Crefeld, Germany, consigned certain goods to appellant at New York. They were shipped by rail to Rotterdam, Holland, and thence to New York per steamship *Nordam,* where they were entered by pro forma invoice dated August 2, 1922. The consular invoice is dated at Crefeld, July 27, was filed in the American consulate at Cologne, Germany, together with the declaration of the consignors, on July 28, and certified by the vice consul at the same place on August 1, 1922. The bill of lading was dated at Rotterdam July 31, 1922, in which it was stated shipment would be made August 1, 1922, and on which last named date it is conceded the *Nordam* sailed from Rotterdam. The only question involved here is the exchange value of the currency of the invoice. The collector found that said currency varied 5 per cent from that proclaimed by the Secretary of the Treasury for the quarter in which the importation was made, and assessed duty on a value determined from a conversion of the said currency to United States money at the Federal reserve bank rate on July 27, 1922, the date of the post-certified consular invoice. The importers appealed to the Board of General Appraisers, which sustained the action of the collector, and from that judgment the importers appeal.

The Board of General Appraisers found that the consular invoice was post certified, which fact is also conceded by counsel for appellants. There is no evidence in the record of the date of actual exportation, and it is conceded that date is not known. It was not

contended by appellants either in their protest or assignment of errors, that the date of the pro forma invoice should be taken for purposes of currency conversion, but the issue made by the parties is on the post-certified consular invoice and will be so considered by the court.

Appellants contend the exchange value of the German currency in question here should be computed as of August 1, 1922, the date of certification of the consular invoice, and in support of this contention argue that that portion of section 25 of the tariff act of August 27, 1894, which provides that the date of certification of a consular invoice shall be deemed the date of exportation, should be followed here. The Government contends said section 25 has been repealed by section 403 of the emergency tariff act of May 27, 1921, and that the exchange value of the foreign currency should be ascertained under said section 403, and T. D. 38742, paragraph VIII. Said sections 25 and 403 are as follows:

SEC. 25. That the value of foreign coin as expressed in the money of account of the United States shall be that of the pure metal of such coin of standard value; and the values of the standard coins in circulation of the various nations of the world shall be estimated quarterly by the Director of the Mint, and be proclaimed by the Secretary of the Treasury immediately after the passage of this Act and thereafter quarterly on the first day of January, April, July, and October in each year. And the values so proclaimed shall be followed in estimating the value of all foreign merchandise exported to the United States during the quarter for which the value is proclaimed, and the date of the consular certification of any invoice shall, for the purposes of this section, be considered the date of exportation: *Provided*, That the Secretary of the Treasury may order the reliquidation of any entry at a different value, whenever *satisfactory evidence shall be produced* to him showing that the value in United States currency of the foreign money specified in the invoice was at, the date of certification, at least ten per centum more or less than the value proclaimed during the quarter in which the consular certification occurred.

SEC. 403. (a) That section 25 of the act of August 27, 1894, entitled "An act to reduce taxation, to provide revenue for the Government, and for other purposes," is amended to read as follows:

SEC. 25. That the value of foreign coin as expressed in the money of account of the United States shall be that of the pure metal of such coin of standard value; and the values of the standard coins in circulation of the various nations of the world shall be estimated quarterly by the Director of the Mint and be proclaimed by the Secretary of the Treasury quarterly on the first day of January, April, July, and October in each year.

(b) For the purpose of the assessment and collection of duties upon merchandise imported into the United States on or after the day of the enactment of this act, wherever it is necessary to convert foreign currency into currency of the United States, such conversion, except as provided in subdivision (c), shall be made at the values proclaimed by the Secretary under the provisions of section 25 of such act of August 27, 1894, for the quarter in which the merchandise was exported.

(c) If no such value has been proclaimed, or if the value so proclaimed varies by 5 per centum or more from a value measured by the buying rate in the New

York market at noon on the day of exportation, conversion shall be made at a value measured by such buying rate. For the purposes of this subdivision such buying rate shall be the buying rate for cable transfers payable in the foreign currency so to be converted; and shall be determined by the Federal Reserve Bank of New York and certified daily to the Secretary, who shall make it public at such times and to such extent as he deems necessary. In ascertaining such buying rate such Federal reserve bank may in its discretion (1) take into consideration the last ascertainable transactions and quotations, whether direct or through the exchange of other currencies, and (2) if there is no market buying rate for such cable transfers, calculate such rate from actual transactions and quotations in demand or time bills of exchange.

It will be observed that section 403 of the emergency tariff act of May 27, 1921, purports to be, and is, a complete revision' of said section 25; that said section 25 is repeated without material change until that portion of said section is reached in and by which a method is provided for ascertaining foreign exchange values. That portion of said section is omitted from section 403 of the act of May 27, 1921, and is therefore repealed. In lieu of the method provided by said section 25, a new method of ascertainment of the value of foreign currency is provided, namely, a determination by the Federal Reserve Bank of New York, which shall be certified daily to the Secretary of the Treasury, and which said valuation as to any importation shall be effective at noon on the day of exportation.

It is evident this change in our method of fixing foreign currency values was brought about by the violent fluctuations in the values of foreign currency during the period immediately following the World War, and which existed at the time of the enactment of said emergency tariff act of 1921. By said section 25, cumbersome and slowly moving machinery was provided by which, on special occasions, and upon the production of "satisfactory evidence," the Secretary of the Treasury might ascertain and fix a different exchange value from that proclaimed by him for the quarter. By said section 403, for purposes of celerity and dispatch, a departure from the proclaimed exchange rate may be had when "the value so proclaimed varies by 5 per centum or more," a fact which obviously must be found in the first instance by the collector.

Said emergency tariff act of 1921 also provided, section 407: "The Secretary shall make rules and regulations necessary for the enforcement of this act." Following the passage of that act the Secretary of the Treasury, on June 14, 1921, issued his regulations thereunder and which are known as T. D. 38742, the relevant portion of which, Section VIII, is as follows:

For the purposes of currency conversion under the provisions of section 25, act of August 28, 1894, as amended by the act of May 27, 1921, the date of exportation shall be the date of sailing of the vessel when the merchandise is exported directly by water from the country of export. In the absence of positive evidence of actual date of exportation, the date of certification of the

invoice if it appears to have been certified prior to exportation; or the date of the invoice if it appears to have been made prior to shipment in case entry is made on a postcertified invoice or on a pro forma invoice.

It is not suggested by appellants that said regulations are not reasonable and legally promulgated. We must, therefore, assume them to be valid. These regulations are very similar to those approved in Wood et al. v. United States (72 Fed. 254).

These regulations provide that where the actual date of the exportation is not shown by positive evidence, and if the invoice was certified prior to the exportation, the date of certification of the invoice shall be taken as the date of exportation. In this case it appears that the goods were in the warehouse at Rotterdam, Holland, the day before the invoice was certified at Cologne, Germany; hence the invoice was not certified prior to exportation. The regulations then provide that if the invoice was made prior to shipment, in case the entry was made on a postcertified or pro forma invoice, then the date of such invoice shall be taken as the day of exportation. . The collector assessed duty on a value as determined from the Federal reserve rate of July 27. In order to do so he necessarily found two things to be true; first, that the exchange used varied 5 per cent from that proclaimed by the Secretary of the Treasury. In this respect he made a special finding. It was necessary for him also to find, to bring the case within Section VIII, of T. D. 38742, that the invoice was made prior to the shipment of the goods in question. It must be presumed he made this finding, otherwise he could not have used the date of the consular invoice as the date of exportation. The Board of General Appraisers sustained such action and finding of fact by the collector. The importer has nowhere attempted to show such finding to be erroneous. If the importer was able to establish a contrary state of facts, it was his duty to do·so and the burden was upon him in that respect. Having failed to do so, he can not now attack such finding in this court. It can not be doubted that the collector had legal authority to make such a finding.—United States v. Klingenberg (153 U. S. 93); United States v. Newhall & Co. (91 Fed. 525).

The judgment of the Board of General Appraisers is, therefore, *affirmed.*