132

## UNITED STATES v. BARR.
### Customs Appeal No. 4461.

Court of Customs and Patent Appeals.
May 22, 1944.

Paul P. Rao, Asst. Atty. Gen. (Joseph F. Donohue, of New York City, Sp. Atty., of counsel) for the United States.

Barnes, Richardson & Colburn, of New York City (J. Bradley Colburn and Eugene F. Blauvelt, both of New York City, of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

On May 3, 1940, appellee (plaintiff below) imported a shipment of woolen fabrics from England to the United States at the port of New York. The merchandise was invoiced in pounds sterling. The consumption entry shows a conversion of the pounds sterling to United States dollars at the rate of "4.035 official" per pound.

The importation was classified as woven fabrics under paragraph 1109(a) of the Tariff Act of 1930. Concerning the classification there is no dispute.

The collector, following the instructions published in T.D. 50134 and T.D. 50146, converted the pounds sterling at the rate of $4.035 per pound.

The section of the Tariff Act of 1930 under which foreign currency is converted into currency of the United States reads as follows:

"Sec. 522. Conversion of Currency.

"(a) *Value of Foreign Coin Proclaimed by Secretary of Treasury.*—Section 25 of the Act of August 27, 1894, entitled 'An Act to reduce taxation, to provide revenue for the Government, and for other purposes,' as amended, is reenacted without change as follows:

" 'Sec. 25. That the value of foreign coin as expressed in the money of account of the United States shall be that of the pure metal of such coin of standard value;

and the values of the standard coins in circulation of the various nations of the world shall be estimated quarterly by the Director of the Mint and be proclaimed by the Secretary of the Treasury quarterly on the 1st day of January, April, July, and October in each year.'

"(b) *Proclaimed Value Basis of Conversion.*—For the purpose of the assessment and collection of duties upon merchandise imported into the United States on or after the day of the enactment of this Act, wherever it is necessary to convert foreign currency into currency of the United States, such conversion, except as provided in subdivision (c), shall be made at the values proclaimed by the Secretary of the Treasury under the provisions of section 25 of such Act of August 27, 1894, as amended, for the quarter in which the merchandise was exported.

"(c) *Market Rate When no Proclamation.*—If no such value has been proclaimed, or if the value so proclaimed varies by 5 per centum or more from a value measured by the buying rate in the New York market at noon on the day of exportation, conversion shall be made at a value measured by such buying rate. If the date of exportation falls upon a Sunday or holiday, then the buying rate at noon on the last preceding business day shall be used. For the purposes of this subdivision such buying rate shall be the buying rate for cable transfers payable in the foreign currency so to be converted; and shall be determined by the Federal Reserve Bank of New York and certified daily to the Secretary of the Treasury, who shall make it public at such times and to such extent as he deems necessary. In ascertaining such buying rate such Federal reserve bank may in its discretion (1) take into consideration the last ascertainable transactions and quotations, whether direct or through exchange of other currencies, and (2) if there is no market buying rate for such cable transfers, calculate such rate from actual transactions and quotations in demand or time bills of exchange." 46 Stat. 739, 31 U.S.C.A. § 372.

Prior to March 25, 1940, the Federal Reserve Bank of New York, pursuant to section 522(c), supra, certified daily to the Secretary of the Treasury a single rate of exchange for each of the currencies of foreign countries, including the pound sterling. Subsequent to that date the said bank certified two rates of exchange for the pound sterling, one denominated "official" and the other "free."

On the date of exportation of the involved merchandise the bank certification was as follows:

Values of foreign currencies

[Value in U. S. dollars]

| Country | Monetary unit | Noon buying rate for cable transfers in New York |
|---|---|---|
| Europe: | | |
| ` * ` ` * ` ` * ` | ` * ` ` * ` ` * ` | ` * ` ` * ` ` * ` |
| England | Pound Sterling | 4.035000 Official. |
| England | Pound Sterling | 3.475138 Free. |
| ` * ` ` * ` ` * ` | ` * ` ` * ` ` * ` | ` * ` ` * ` ` * ` |

The bank in a letter advised the Secretary of the Treasury that the dual rate certification was made by reason of information received that after March 25, 1940, all foreign exchange of certain countries, including the United States, which was received in Great Britain would have to be surrendered to the Bank of England or its authorized agencies and that payment therefor would be made at a rate fixed by the British Treasury. The British Government had compiled a list of commodities which could be exported from Great Britain only after it had been shown that they were purchased either in the currency of one of the designated countries or with pounds purchased by such currencies from the Bank of England or one of its authorized agents at the rate fixed by the British Treasury.

Pursuant to section 522(c) the Secretary of the Treasury issued on April 15, 1940, T.D. 50134, 5 F.R. 1447:

"Conversion of currency—Canadian dollars, Newfoundland dollars, English pounds, Australian pounds
"Conversion rate for customs purposes of Canadian dollar, Newfoundland dollar, English pound and Australian pound

"Treasury Department, April 15, 1940.
"To Collectors of Customs and Others Concerned:

"Reference is made to the daily buying rates for foreign exchange which section 522(c) of the Tariff Act of 1930 (U.S.C. title 31, sec. 372(c) [31 U.S.C.A. § 372(c)]) directs the Federal Reserve Bank of New York to certify to the Secretary of the Treasury. The list of rates certified by the Federal Reserve Bank of New York has included two rates for the Canadian dollar

and the Newfoundland dollar since March 22, 1940, two rates for the English pound since March 25, 1940, and two rates for the Australian pound since April 1, 1940. In each case the higher rate has been designated 'official,' the other 'free.'

"Whenever it is necessary to convert any of the above-mentioned currencies into currency of the United States for the purpose of the assessment and collection of·duties upon imported merchandise, customs officers shall make such conversions on the basis of the rate designated 'official,' unless the rate proclaimed for the respective currency pursuant to section 522(a) of the Tariff Act of 1930 (U.S.C. title 31, sec. 372(a) .[31 U.S.C.A. § 372(a)]) varies from such 'official' rate by less than 5 per centum. In the latter event the proclaimed rate should be used.

"Until further notice only the 'official' rates for the named currencies will appear in the weekly issues and bound volumes of the Treasury Decisions. The pertinent facts and circumstances will be kept under review and, should future developments make it advisable, further instructions will be given.

"(342.211)      H. Morgenthau, Jr.,
      "Secretary of the Treasury."

The relevant portion of T. D. 50146, dated May 11, 1940, reads as follows:

"Foreign currencies—Rates of exchange

"Rates of exchange certified to the Secretary of the Treasury by the Federal Reserve Bank of New York

"Treasury Department,
"Office of the Commissioner of Customs,
"Washington, D. C., May 11, 1940.

"To Collectors of Customs and Others Concerned:

"The appended table of the values of certain foreign currencies as certified to the Secretary of the· Treasury by the Federal Reserve Bank of New York under the provisions of section 522 (c), Tariff Act of 1930, during the period from May 3 to 9, 1940, inclusive, is published for the information of collectors of customs and others concerned.

"By direction of the Commissioner:
"(342.211)         W. R. Johnson,
      "Deputy Commissioner of Customs."

Values of foreign currencies certified to the Secretary of the Treasury by the Federal Reserve Bank of New York under provisions of section 522 (c), Tariff Act of 1930

Period May 3 to 9, 1940, Inclusive

| Country | Name of currency | May 3 | * * * |
|---------|------------------|-------|-------|
| Europe: | | Dollars | |
| * * * | * * * | * * * | * * * |
| England | Pound Sterling | [4] 4.035000 | * * * |
| * * * | * * * | * * * | * * * |

* * *

[4] (Official or Controlled.)   *   *   *   The rates for Canadian dollars, Newfoundland dollars, English pounds, and Australian pounds included in this list are for use pursuant to the directions in T. D. 50134.

Appellee protested the action of the collector in converting the pounds sterling of the invoice as aforesaid and claimed that the collector should have converted at the "free" rate of exchange on the date of exportation.

At the trial before the United States Customs Court, Third Division, the Government moved to dismiss the protest on the ground that it presented a non-justiciable question and further that the protest and the accompanying papers show on their faces that no cause of action was presented.

The motion was vigorously pressed and the sufficiency of the protest as vigorously defended in briefs and oral arguments. The trial court denied the motion. Subsequently, at the trial on the merits the Government renewed its motion to dismiss, and the motion was held to have been properly denied.

The trial court in its decision on the merits reviewed the facts in the case, which among other things disclosed that whiskey, tin, furs, jute, rubber, and (later) diamonds, could not be exported from Great Britian unless it was shown by the exporter that payment for such merchandise was made either in the currency of the importing country or at the "official" rate. The court found in favor of appellee, holding that it was the duty of the collector to convert at the rate designated "free" as certified by the Federal Reserve Bank even though the Secretary of the Treasury had "arbitrarily" directed the collector to select the "official" rate. Judgment was entered accordingly, from which this appeal was taken.

The Government here contends that the protest does not state a good cause of action; that the action of the Secretary of the Treasury in publishing and directing the use of the official rate of exchange as the proper rate is final and conclusive; that the certification of two rates on May 3, 1940,

was either improper or incomplete, and that if improper both rates should have been rejected and the rate for the quarter proclaimed under section 522(a), ($8.2397) should have been used, and that if incomplete the Secretary should have acted as he did; and that, assuming the trial court was correct in holding that it could review the action of the collector to determine whether or not he used the correct rate, the rate used by the collector was the correct one.

The appellant makes well-reasoned contentions as to why the protest does not state a good cause of action. However, in view of the long continued holdings of this court we are of opinion that such contentions may not be upheld. In the case of Carter v. United States, 1 Ct.Cust.App. 64, T.D. 31033, this court quoted from the case of Converse v. Burgess et al., 18 How. 413, 15 L.Ed. 455, as follows:

"We are not, therefore, disposed to exact any nice precision, nor to apply any strict rule of construction upon the notices required under this statute. It is sufficient if the importer indicates distinctly and definitely the source of his complaint and his design to make it the foundation of a claim against the Government."

In the Carter case, supra, the case of Arthur v. Morgan, 112 U.S. 495, 5 S.Ct. 241, 28 L.Ed. 825, was likewise referred to. That case approved the principal enunciated in the Converse case, supra. See also Rice & Co. et al. v. United States, 10 Ct. Cust.App. 165, T.D. 38403, affirmed 257 U.S. 536, 42 S.Ct. 212, 66 L.Ed. 357.

The protest herein gives notice of dissatisfaction with the decision of the collector for the reason that the currency of the invoice should have been "converted at the buying rate in the New York market at noon on the day of exportation of the merchandise, under Section 522(c) * * *, such buying rate varying by more than 5 per centum from the rate proclaimed by the Secretary of the Treasury under the provisions of Section 522(b)." The protest further stated that the assessment of duties and taxes was illegal and void.

It is our opinion that under the liberal construction placed upon protests as above noted the collector was advised of the complaint in appellee's protest, and it was sufficiently pointed out what appellee claimed the rate of conversion should be. The collector was not confused or uncertain, because his decision was reviewed and affirmed by him.

We agree with the contention of appellant that the direction of the Secretary of the Treasury that the rate of conversion should be the official rate was binding on the Collector of Customs at the port of New York in view of section 502(c) of the Tariff Act of 1930, 19 U.S.C.A. § 1502(c), which provides as follows:

"(c) *Duties of Customs Officers.* It shall be the duty of all officers of the customs to execute and carry into effect all instructions of the Secretary of the Treasury relative to the execution of the revenue laws; and in case any difficulty arises as to the true construction or meaning of any part of the revenue laws, the decision of the Secretary shall be binding upon all officers of the customs."

However, it is our opinion that the importer was entitled to protest because it was the collector's action against which the importer protested. There was in the instant case a variance of more than 5 per centum between the proclaimed value ($8.- 2397) and the published exchange rate ($4.- 035), which fact unquestionably was found by the collector, so that the case of Fry & Friedsam v. United States, 12 Ct.Cust.App. 486, T.D. 40694, relied on by appellee, is no precedent for his contention that the collector should have observed the difference in value of 5 per centum or more between the "official" and the "free" rates. The latter difference is not provided for by the statute.

Since it was the statutory duty of the collector to carry into effect the instruction of the Secretary of the Treasury, the only review that can come before the courts is an inquiry as to whether or not such instruction was in conformity with the statute, section 522(c). If such instruction shows upon its face that it conforms to the law, it is conclusive and binding, and furthermore is not subject to judicial inquiry as to its correctness. J. K. Clarke v. United States, 17 C.C.P.A., Customs, 420, T.D. 43866.

We are of opinion that section 522(c), supra, contemplates the finding of a single buying rate of exchange. This we think is obvious from a reading of the section. There is but one standard of currency in Great Britain; namely, the pound sterling. This is not controverted. If section 522(c) were to be construed to mean

that any number of buying rates on the New York market could be certified by the Federal Reserve Bank of New York, the ultimate results as far as tariff laws are concerned would obviously be "confusion worse confounded." Furthermore, anything in Great Britain could be purchased for pounds sterling converted at the "official" rate. Such is not the case with "free" pounds.

The Secretary of the Treasury published only the buying rate of pounds sterling at the "official" rate. That was *the all-inclusive* buying rate of pounds. Therefore, the publication by the Secretary of T.D. 50134 on its face conformed to the law and is conclusive and binding on the courts and will not be subject to judicial inquiry as to its correctness, and since the collector's action conforms to the direction of such decision it must be sustained.

It is not necessary to consider other contentions made herein, nor the history of the legislation leading up to the present tariff statutes here involved in view of what has been said, nor is it necessary to discuss the many cases from the beginning of tariff history to the present time which have been cited by the parties.

For the reasons hereinbefore stated the judgment of the United States Customs Court is reversed.

Reversed.

LENROOT, Associate Judge, sat during the argument of this case but resigned before the opinion was prepared.